UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  WILLIAM P. MCCUAN,

        Debtor.
_____

REGIONS BANK, and ROBERT E.
TARDIF, JR., Trustee for the
Estate of William P. McCuan,

        Plaintiffs,

v.                                    Case No:  2:19-cv-317-JES
                                      Bankr. No. 9:14-BK-965-FMD
                                      Adv. No. 9:14-ap-402-FMD
MDG  LAKE  TRAFFORD,  LLC,
MCCUAN  IRREVOCABLE  TRUST,
WILLIAM P. MCCUAN,

        Defendants,
and

MJF ASSOCIATES, LLP, K&M
DEVELOPMENT     CORPORATION,
INC., THE MCCUAN EXTENDED
FAMILY  TRUST  a/k/a  THE
MCCUAN FAMILY TRUST, MCCUAN
FAMILY,  LLC,  THE  MCCUAN
IRREVOCABLE TRUST, and JILL
MCCUAN,

        Impleaded Third-
        Party Defendants.
_____

ROBERT E. TARDIF, JR.,
Trustee,

        Plaintiff,

v.                                    Adv. No. 9:16-ap-080-FMD

JILL     MCCUAN,     MCCUAN
IRREVOCABLE  TRUST,  WILLIAM

P. MCCUAN as co-trustee of
the McCuan Irrevocable
Trust, IRA SUGAR as co-
trustee of the McCuan
Irrevocable Trust, SUNTRUST
BANK as Investment Manager
of the McCuan Irrevocable
Trust, K&M DEVELOPMENT
CORPORATION, INC., MDG
COMPANIES OF NAPLES, INC.,
MDG CAPITAL PARTNERS REALTY,
INC., MDG CAPITAL PARTNERS
FINANCIAL CENTRE, INC., and
LAKEFRONT NORTH INVESTORS,
LP,

        Defendants.

---

### OPINION AND ORDER

This matter comes before the Court on an appeal and cross appeal after a four-day trial in the Bankruptcy Court of two consolidated adversary proceedings. In both adversary proceedings, the plaintiffs asserted that debtor William P. McCuan made fraudulent transfers to defendants to frustrate the collection of judgments in excess of $14 million obtained by Regions Bank, N.A. (Regions Bank). In the first adversary proceeding, plaintiffs Regions Bank and Robert E. Tardif, Jr., the Chapter 7 trustee (the Trustee), pursued proceedings supplemental under Fla. Stat. § 56.29 seeking judgments avoiding certain transfers alleged to have been fraudulent. In the second adversary proceeding, the Trustee sought to avoid certain transfers pursuant to 11 U.S.C. § 544(b) and the Florida Uniform

Fraudulent Transfers Act (FUFTA).   After trial, the Bankruptcy Court entered a judgment mostly in favor of plaintiffs avoiding certain (but not all) transfers.   (Doc. #6-3.)[1]   Judgment was entered in favor of Mrs. McCuan.   Defendants, including debtor, appeal the portions of the judgment avoiding three of the transfers.   The cross-appeal relates to the prior Order on Implead Third Party Defendants' Motion for Summary Judgment (Doc. #6-37) and more specifically the Order Denying Motion for Rehearing, Reconsideration and/or to Alter or Amend Summary Judgment Order (Doc. #6-49).

## I.

Until his death in 2017, debtor William P. McCuan (Debtor or McCuan) was a real estate developer, investor, and businessman who owned and/or operated several corporations and limited liability companies and was the settlor of several trusts.   Regions Bank began a lending relationship with Debtor and his companies in the 1990s and Regions Bank was their main source of financing.   Debtor, but not his wife Jill McCuan, personally guaranteed the companies' loan obligations to Regions Bank.   Debtor periodically submitted both joint and individual financial statements to Regions Bank,

---

[1] The Court will refer to the District Court docket as "Doc.", the Bankruptcy case docket as "Bankr. Doc.", and the Adversary Proceeding dockets as "Adv. Doc. 14-402" or "Adv. Doc. 16-80".

which were used by Regions Bank to underwrite loans and loan renewals.

As of October 31, 2007, Debtor's financial statement reflected that he personally held a 100% interest in "cash and cash equivalent" with a value in excess of $4.4 million in three specific investment accounts[2] at Brown Investment Advisory and Trust Company (Brown Investment Co.).  As of June 2008, the value of these Brown Investment Accounts was approximately $3.33 million.  Mrs. McCuan had no ownership interest in these funds.

In September 2008 the companies' debt with Regions Bank was maturing, but the companies did not have the funds to pay the loans.  Three significant events took place.  First, on September 8, 2008, Debtor executed the paperwork to add Mrs. McCuan to the Brown Investment Accounts as "tenants by the entireties."  Mrs. McCuan provided no consideration for this.  Second, in September 2008, Debtor added Mrs. McCuan's name to his individual account at BB&T, which then had a balance in excess of $360,000.  Again, no consideration was given by Mrs. McCuan.  Third, also in September 2008, Debtor and his accountant/financial advisor (Ira Sugar) met with Regions Bank to discuss restructuring the loans due to mature later in the year.  Regions Bank rejected their proposed

---

[2] Accounts ending in -1, -2, and -9, collectively referred to as the "Brown Investment Accounts."

restructuring plan.  No payments on the loans were made after this meeting, and the companies went into default.

Beginning in April 2009, Regions Bank filed five lawsuits in state court to foreclose on collateral and to enforce Debtor's personal guaranty, including one referred to as the Lake Trafford Action.  By June 2011, Regions Bank had obtained five judgments for an aggregate amount of over $14 million.

After the September 2008 meeting with Regions Bank, Debtor began a series of transfers (highlighted transfers are the subject of this appeal):

- On March 20, 2009, Debtor transferred $700,000 from two of the Brown Investment Accounts (Accounts -1 and -2) to purchase three certificates of deposits at SunTrust: (1) a $250,000 CD in the name of "W. Patrick McCuan or Jill McCuan" and James Gaylor; (2) **a $200,000 CD in the name of MJF**; and (3) a $250,000 CD in the name of "Jill McCuan POD to W. Patrick McCuan" and "MDG Companies".

- On July 22, 2009, Debtor **transferred $44,000** from Brown Investment Account-2 to a BB&T account held by McCuan Trust.

- On January 1, 2010, Debtor transferred his interest in an **entity known as MDG-Patriot, LLC,** which had a value of $78,000 at the time, to McCuan Family, LLC.

- On August 17, 2010, Debtor transferred over $971,000 from two Brown Investment Accounts (Accounts -1 and -2) to SunTrust accounts held jointly by Debtor and his wife.

- On September 3, 2010 Debtor transferred $1,085,970 from a Brown Investment Account (Account -1) to a SunTrust account held jointly by Debtor and his wife.

- On September 26, 2011, Debtor transferred $100,000 from the joint SunTrust account to McCuan Trust.

- On January 13, 2012, Debtor transferred $100,000 from this same SunTrust account to K&M.

- On January 27, 2012, Debtor transferred $91,575 in cash and $658,682 in other assets from the joint SunTrust account to an account held by McCuan Trust.

(Doc. #6-3, pp. 9-11.)

On November 18, 2013, the state court in the Lake Trafford Action entered an order allowing Regions Bank to pursue proceedings supplementary under §56.29 of the Florida Statutes.  In that proceeding, Reginal Bank asserted that transfers had been made by Debtor with the intent to hinder, delay, or defraud Regions Bank. The "look back" period under Fla. Stat. § 56.29(3)(a) for the avoidance of a transfer is one year from service of the summons and complaint on the transferor in the underlying action.  Debtor

was served in the Lake Trafford Action on April 13, 2009, so the
look-back date for transfers was April 13, 2008.

On January 29, 2014, Debtor filed a petition under Chapter 7
of the Bankruptcy Code.  Two adversary proceedings are relevant
to this appeal.  On May 8, 2014, the state court proceeding
supplementary was removed to the Bankruptcy Court.  On October 3,
2014, third parties were permitted to join the proceedings
supplementary, and a Third-Party Complaint was filed.

On August 27, 2015, the Bankruptcy Court issued an Order on
Implead Third Party Defendants' Motion for Summary Judgment.
(Doc. #6-37.)  In the summary judgment Order, the Bankruptcy Court
found it had no jurisdiction over the Maryland Brown Investment
Advisory & Trust Company accounts -1 and -2.  The Bankruptcy Court
found that plaintiffs could not establish the essential element of
their claim that the transfer of debtor's interests in Little
Harper's, LLC and Lakefront North Investor's Limited Partnership
to McCuan Family, LLC occurred after April 13, 2008.  Further,
summary judgment was granted because JLM Investment Corp. was not
a party and no relief may be granted as to MJF Associates, LLP.
As to the transfer of debtor's interest in MDG-Patriot, LLC to
McCuan Family, LLC, the issue was permitted to proceed to trial as
the transfer was not addressed by the motion.  The Order granted
partial summary judgment: (1) for Impleader defendants K&M, MJF,
Jill McCuan, McCuan LLC, McCuan Trust, and the McCuan Extended

Family Trust and finding no jurisdiction over the Brown Accounts
-1 and -2; (2) for the transfer of Debtor's interests in Little
Harper's, LLC and Lakefront North Investor's Limited Partnership
to McCuan LLC because plaintiffs could not establish the essential
element of their claim that the transfers occurred after April 13,
2008; and (3) for the transfer of debtor's interest in MJF to JLM
Investment Corp. because JLM is not a party to the action.

On November 30, 2015, the Bankruptcy Court issued an Order
Denying Motion for Rehearing, Reconsideration and/or to Alter or
Amend Summary Judgment Order.  (Doc. #6-49.)  The Bankruptcy Court
noted that plaintiffs could not raise issues for the first time on
reconsideration, to wit, that the pledge of the Brown Accounts to
SunTrust was defective or illusory.  The Bankruptcy Court further
found that the evidence offered by plaintiffs to refute the
impleaded defendants' evidence was insufficient to show the
existence of a genuine dispute of material fact.  The Bankruptcy
Court found no basis for reconsideration because plaintiffs failed
to meet the burden to show that the transfers of debtor's ownership
interests in Little Harpers and Lakefront occurred prior to April
13, 2008.

On January 29, 2016, the Trustee commenced an adversary
proceeding seeking to avoid the transfer of assets from the Brown
Investment Accounts as intentional and constructive fraudulent
transfers under 11 U.S.C. § 544(b) and the FUFTA. On May 10, 2017,

the two adversary proceedings were consolidated. The Bankruptcy Court conducted a trial on June 5, September 11-12, and October 15, 2018, on the consolidated adversary proceedings.

The Bankruptcy Court determined that plaintiffs were entitled to judgment against defendants MJF, McCuan Trust, and K&M because the transfers on March 9, 2009, July 22, 2009, September 26, 2011, January 13, 2012, and January 27, 2012, were made with actual fraudulent intent and were constructively fraudulent. Judgment was entered against MJF in the amount of $200,000 (the March 9, 2009 transfer); against McCuan Trust in the amount of $44,000 (the July 22, 2009 transfer), $100,000 (the September 26, 2011 transfer), and $750,256.85 (the January 27, 2012 transfer); and against K&M in the amount of $100,000 (the January 13, 2012 transfer). (Id., p. 29.)  The Bankruptcy Court further found that plaintiffs were entitled to judgment in the amount of $78,000 against McCuan LLC based on the transfer of Debtor's interest in MDG-Patriot, LLC to McCuan LLC on January 1, 2010. The transfer was deemed avoidable as an actual and constructive fraudulent transfer.  The Bankruptcy Court concluded, however, that it would be inequitable to enter judgment against Mrs. McCuan.  Final Judgment was entered on May 15, 2019.

On February 13, 2018, the Bankruptcy Court entered an Order Granting Motion for Reconsideration (Doc. #6-73) and finding that § 56.29 authorizes a court to enter a money judgment against a

transferee of a judgment Debtor's asset even when the bankruptcy court lacks jurisdiction over the transferred asset.

## II.   Standard of Review

The district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the U.S. Bankruptcy Court. 28 U.S.C. § 158(a).  When an adversary proceeding is involved, "it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation."  In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985).  "In bankruptcy, adversary proceedings generally are viewed as 'stand-alone lawsuits,' and final judgments issued in adversary proceedings are usually appealable as if the dispute had arisen outside of bankruptcy."  In re Boca Arena, Inc., 184 F.3d 1285, 1286 (11th Cir. 1999).  "Under general legal principles, earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order."  Myers v. Sullivan, 916 F.2d 659, 673 (11th Cir. 1990).

The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error.  In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).  A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed."

Crawford v. W. Electric Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); In re Walker, 515 F.3d 1204, 1212 (11th Cir. 2008).  Where a matter is committed to the discretion of the bankruptcy court, the district court must affirm unless it finds that the bankruptcy court abused its discretion. Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1238 (11th Cir. 2006).  A court abuses its discretion "if it applies an incorrect legal standard, follows improper procedures in making the determination", makes findings of fact that are clearly erroneous, or applies the law in an unreasonable or incorrect manner.  Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 77 (11th Cir. 2013).  "The abuse of discretion standard allows a range of choices for the [bankruptcy] court, so long as any choice made by the court does not constitute a clear error of judgment."  Id. (citation omitted).

### III. Issues on Appeal of Final Judgment

Appellants challenge the Final Judgment only as to three of the transfers, asserting various errors as to: (1) the purchase of a $200,000 CD at SunTrust on behalf of MJF by Debtor; (2) the transfer of $44,000 to the McCuan Trust; and (3) the transfer of Debtor's interest in MDG-Patriot, LLC to McCuan Family, LLC.  On the Cross-Appeal, the Trustee argues that the Bankruptcy Court

erred by denying reconsideration of the summary judgment ruling, and that it erred by granting judgment in favor of Jill McCuan.

**A. $200,000 Certificate of Deposit at SunTrust for MJF**

On March 20, 2009, Debtor transferred $700,000.00 from two of the Brown Investment Accounts to purchase three certificates of deposits ("CDs") at SunTrust.  One of the CDs was in the name of MJF Associates LLLP for $200,000.  (Doc. #6-3, p. 9.)  The Bankruptcy Court found that the transfers from the Brown Investment Accounts were fraudulent transfers made with intent to hinder, delay, or defraud Regions Bank; that the transfers were made while Regions Bank was about to pursue, or had already obtained judgments against debtor, and debtor was in poor financial condition at the time of the transfers; and that the Trustee established that Debtor was insolvent no later than mid-2011, and that Debtor did not receive reasonably equivalent value in exchange for the transfers. (Id. at p. 24.)

The FUFTA provides in pertinent part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . .
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(b).

Appellant argues that the Bankruptcy Court erred as a matter of law when it found this transaction was a fraudulent transfer. This is so, appellant argues, because the source of the funds – the Brown Investment Accounts – had already been pledged as collateral for the letter of credit from SunTrust. Since SunTrust already had a valid lien on the funds securing the LOC (line of credit), Appellant argues the funds are not "assets" within the meaning of the FUFTA. Additionally, because the funds were subject to control by SunTrust, Debtor was contractually prevented from withdrawing the funds from the two Brown Investment accounts if it would result in balances of less than $3.2 million. Appellants further argue that the asset must be a non-exempt asset to be subject to a fraudulent transfer action, which excludes property encumbered by valid liens or otherwise exempt under non-bankruptcy law. (Doc. #13, p. 20.) Defendants argue that the Bankruptcy Court ignored its own prior rulings that the Brown

Accounts were fully pledged and encumbered by a valid security interest to secure the SunTrust line of credit.  (Id., p. 24.)

As the Bankruptcy Court had previously discussed at a July 29, 2015, hearing on the motions for summary judgment:

> Alternatively, to the extent that Brown Account 1 and Brown Account 2 were pledged as collateral to SunTrust Bank, the Stengel case, 129 Fla. 627, requires me to find that property that is pledged as collateral for a loan is not subject to a writ of execution in a proceedings supplementary.  Therefore, the fact that Brown Accounts 1 and 2 were transferred from the Debtor to the Debtor and his wife as tenants by the entireties after they had already been pledged as collateral to SunTrust is irrelevant.
>
> This is because the re-titling of the accounts to the tenancy by the entireties form of ownership is not a transfer that affected Regions as Regions could never have reached the pledged accounts to satisfy the judgments it eventually obtained. That's In re Kimmel, 131 B.R. 223 at 229, a decision from the Southern District of Florida Bankruptcy Court in 1991.
>
> In that case, the court stated that, "A debtor can only commit fraud on his creditors by disposing of such property as the creditor would have a legal right to look for in satisfaction of his claim."

(Doc. #6-36, pp. 7-8.)  "Under Florida law, property pledged as collateral for a loan cannot be levied upon by a judgment creditor."  (Doc. #6-49, p. 7.)  The argument by the Trustee that the Brown Accounts had not been fully pledged was not addressed on reconsideration as it was not raised at the hearing in the first

instance, and therefore not appropriate without an opportunity to respond.  (Doc. #6-73, p. 9.)

Plaintiffs respond that the value of the Brown Accounts exceeded the amount of the SunTrust lien at the time of transfer, and any amount in excess of the SunTrust lien was an "asset" subject to plaintiffs' claims.  (Doc. #30, p. 33.)

> If a lien truly existed, then no funds could have been transferred in the first instance. Yet here, Debtor was able to and even "permitted" to transfer funds. Further, even if any lien had existed, the SunTrust agreement represented that the Brown Accounts collateral was owned solely by Debtor.

(Id., p. 34.)

The Court finds no conflict in the rulings of the Bankruptcy Court.  Brown Investment Account -1 was used as collateral for the March 2, 2006, $1 million line of credit with SunTrust, and Brown Investment Account -2 was used in 2008 to increase the line of credit to $2.15 million.  It was after the assets were pledged as collateral to SunTrust that debtor retitled the Brown Accounts to add Mrs. McCuan in September 2008, and it was in March 2009, that the certificates of deposit were purchased from Brown Account -2.  These post-pledge events were irrelevant to the already pledged funds, as the Bankruptcy Court stated.

As of June 30, 2008, just prior to the increase of the line of credit, Brown Investment Account -2 had an ending market value of $2,153,351.63.  (Doc. #6-101.)  On March 20, 2009, the line of

credit had an outstanding balance of $1,438,216.87. (Doc. #13, p. 15; Doc. #30, p. 22.) As of March 31, 2009, Brown Investment Account -2 had an ending market value of $1,697,923.81, doc. #6-103, and by September 30, 2009, an ending market value of $476,068.85, doc. #6-104. This is after the purchase of the $200,000 certificate of deposit in the name of MJF. On May 18, 2011, $1,922,489 was used from the joint SunTrust account to pay the full balance of the line of credit. (Doc. #6-220, ¶ 24.)

> "Asset" means property of a debtor, but the term does not include:
>
> (a) Property to the extent it is encumbered by a valid lien;
>
> (b) Property to the extent it is generally exempt under nonbankruptcy law; or
>
> (c) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

Fla. Stat. § 726.102(2). As noted by plaintiffs, the surplus of funds in the Brown Investment Accounts are assets that were not encumbered by a lien, the funds were in debtor's name only and non-exempt, and the attempt to convert the Brown Investment Accounts to TBE was ineffective. Further, the later transactions to purchase the certificates of deposit and transfer funds to a joint SunTrust account were clearly made because there was an amount to transfer, and the transfer was made with intent to hinder or delay and defraud. Although it is undisputed that the pledged

funds were not reachable by Regions Bank, any remaining assets in the accounts were reachable and subject to supplementary proceedings.

### B. Transfer of $44,000 to McCuan Trust

On July 22, 2009, debtor transferred $44,000 from Brown Account -2 to a BB&T account held by McCuan Trust. (Doc. #6-3, p. 9.) The Bankruptcy Court found that the transfer was made to insiders of debtor, were concealed, and the transfers divested debtor of significant non-exempt assets. The Bankruptcy Court also found that Mrs. McCaun was added to the BB&T Account in September 2008 when default on the Regions debt was imminent. The Bankruptcy Court found that Mrs. McCaun's name was added to hinder, delay, or defraud Regions. (Id. at pp. 22-23.)

Appellants argue that the Bankruptcy Court failed to consider that the funds were derived from the fully pledged Brown Investment Account -2, and it was unrebutted at trial that the funds were used to satisfy debtor's car loan, thereby "reducing his liabilities and improving Debtor's ability to pay creditors." (Doc. #13, p. 25.) Appellants argue that the McCuan Trust received "*no appreciable benefit* from the transfer, incidental or otherwise, besides holding the money for twenty-eight days." (Id., pp. 27-28.) Defendants also argue that the source of the funds came from an account fully pledged for the SunTrust line of

credit and thus the $44,000 is not within the definition of an "asset." (Id., p. 28.)

In response, plaintiffs argue that even a transfer in repayment of a pre-existing debt can constitute a fraudulent transfer if it was made with actual fraudulent intent, as found by the Bankruptcy Court. (Doc. #30, p. 34.)

As with the certificate of deposit to MJF, the $44,000 came from the remaining assets in Brown Investment Account -2 and was first transferred to a BB&T account held by McCuan Trust on July 22, 2009. (Doc. #6-3, p. 9.) Mrs. McCuan was added to the BB&T account in September 2008, "when the default on the Regions debt was imminent." (Id., p. 23.) Defendants argue that any benefit to McCuan Trust was "de minimus at best." (Doc. #13, p. 28.) Ultimately, the $44,000 was used to satisfy a loan on a car purchased by debtor in his name in 2008, which was not retitled to include Mrs. McCuan until December 2009. (Doc. #6-3, p. 9.)

Even if it was beneficial to pay off one particular loan that reduced the amount owed to secured creditors, it does not follow that the specific transfer was not done with the intent to defraud another. The Bankruptcy Court found that the $44,000 transfer was actually and constructively fraudulent, and therefore subject to avoidance. Mrs. McCuan was added to the Brown Investment Accounts and the BB&T account when default was imminent, and she gave no

consideration for having her name added to the Brown accounts. (Doc. #6-3, pp. 23, 24.)

### C. Transfer of MDG-Patriot to McCuan LLC

On January 1, 2010, debtor transferred his interest in an entity known as MDG-Patriot, LLC to McCuan LLC.   Debtor's membership interest was valued at $78,000 by the October 31, 2009, financial statement.  (Doc. #6-3, p. 10; Doc. #6-220, ¶ 19.)

Defendants argue that there was no evidence of the value of debtor's interest in MDG-Patriot, LLC on the date of the alleged transfer.  It is argued that the defendants did not stipulate that the value in the October 31, 2009 financial statement was correct or that the value was the same at the time of the alleged transfer on January 1, 2010.  (Doc. #13, pp. 30 n.5.)  Defendants further argue that "where a debtor transfers an interest in a limited liability company, the law does not permit avoidance of the transfer due to the strict statutory procedures for charging liens."  (Id., p. 33.) Defendants argue that Regions Bank would never have been entitled to the value of the interest, only the distributions pursuant to a valid charging lien. (Id., p. 34.)

Plaintiffs respond that the arguments lack merit because charging orders only apply to the extent a claim exists against a member, and courts have held that no law permits fraudulently transferring with impunity an interest in an LLC.  (Doc. #30, p. 35.)

The first argument is without merit.  The parties' own Stipulated Facts in the Joint Pretrial Statement specifically provides: On January 1, 2010, Debtor transferred his interest in MDG-Patriot, LLC to McCuan LLC. The Debtor's October 31, 2009 financial statement states that the value of the debtor's membership interest in MDG-Patriot, LLC is $78,000. (Doc. #6-220, ¶¶ 18-19.)  Further, it is MDG Companies that provided the statement of financial condition as of October 31, 2009, indicating in the Schedule to Statement of Financial Condition the investment worth of MDG-Patriot, LLC.  (Doc. #6-155, p. 6.)

Plaintiffs sought judgment against McCuan LLC "based on the transfer of the Debtor's interest in MDG-Patriot, LLC, to McCuan LLC.  (Doc. #6-3, p. 14.)  The Bankruptcy Court found that the transfer was avoidable as an actually and constructively fraudulent transfer, and remedy under § 726.108, remedies for creditors including avoidance, were appropriate rather than the remedy under § 605.0503 of the Florida Statutes, for a charging order, citing Regions Bank v. Kaplan, 8:16-CV-2867-T-23AAS, 2018 WL 3954344, at *4 (M.D. Fla. Aug. 17, 2018), aff'd, 805 F. App'x 1004 (11th Cir. 2020).  (Id., pp. 29-30.)

In an action alleging a fraudulent transfer, a creditor may obtain an avoidance of the transfer to the extent necessary to satisfy the creditor's claim, Fla. Stat. § 726.108(1)(a), or if a creditor has obtained a judgment on a claim against the debtor,

the creditor "may levy execution on the asset transferred or its proceeds", Fla. Stat. § 726.108(2).  Unless the limited liability company has only one member, Fla. Stat. § 605.0503(4), (5), "a charging order is the sole and exclusive remedy by which a judgment creditor of a member or member's transferee may satisfy a judgment from the judgment debtor's interest in a limited liability company or rights to distributions from the limited liability company."  Fla. Stat. § 605.0503(3).

In this case, judgment has not yet been obtained, or rather "Regions is not yet a judgment creditor."  Kaplan, 2018 WL 3954344, at *4.  Therefore, plaintiffs are entitled to a money judgment in the amount of $78,000.

### IV. Issues on Cross-Appeal

Appellee also presents three issues on cross-appeal: (1) the Bankruptcy Court erred in holding, on summary judgment, that plaintiffs' right to recover on the Debtor's transfer of his interests in Little Harpers, LLC and Lakefront North Investors Limited Partnership was time-barred; (2) the Bankruptcy Court erred by denying reconsideration of the summary judgment ruling; and (3) the Bankruptcy Court erred by granting judgment in favor of Mrs. McCuan based on an equitable defense despite expressly finding that the transfers adding Mrs. McCuan were voidable transfers.

## A. Little Harpers and Lakefront North

Debtor had a membership interest in Lakefront North Investors Limited Partnership (Lakefront), valued at $7.6 million, and Little Harpers, LLC (Little Harpers), valued at $2.4 million. Both were assigned to McCuan LLC. (Doc. #6-28, pp. 1-2.) As of September 2011, Debtor had transferred his interest in Lakefront and Little Harper. (Doc. #6-24, p.9.) Debtor testified that he sold his interest in Lakefront before the October 31, 2008 financial statement was done, and he sold it to an LLC. (Doc. #6-28, p. 38.) On summary judgment, it was argued as "uncontroverted fact" that Debtor's interests were transferred by written assignment on November 1, 2007. (Doc. #6-20, p. 4; Doc. #6-21.)

Plaintiffs argue that the Bankruptcy Court erred by: (1) finding no genuine issue of fact existed on the issue of whether the Little Harpers and Lakefront transfers were subject to avoidance (Doc. #30, p. 36); and (2) relying on the effective date of the assignments, Sugar's deposition testimony, and debtor's K-1s and financial statement, and by rejecting plaintiffs' evidence. Plaintiffs argue that defendants' "questionable evidence for which credibility could not be established" was accepted as true, and inferences were all drawn in favor of defendants, which is in direct contravention of summary judgment requirements. (Doc. #30, pp. 52-53.) Defendants respond that no credibility determinations were made because there was no basis to question either Debtor or

Sugar's testimony since they were not in conflict. (Doc. #35, p. 24.)

Plaintiffs take issue with reliance on the date on the assignments because "at most", the date is the "effective as of" date. (Doc. #30, p. 54.) Plaintiffs argue that the record evidence demonstrates that the assignments were not executed on November 1, 2007. (Id.) Plaintiffs argue that the effective date is irrelevant to the issue of when the assignments were executed because it was never argued that the effective date was the same day the assignments were consummated. (Id., pp. 55-56.) Plaintiffs argue that the Bankruptcy Court necessarily determined that Sugar's testimony was credible by giving it more weight than the conflicting evidence provided by plaintiffs. Plaintiffs argue that neither debtor nor Sugar know the actual date of the assignments and public record documents show that debtor continued to hold and manage his interests in Lakefront and Little Harpers after the "effective date" of the assignments. (Doc. #6-28, p. 3.) Plaintiffs note that the Bankruptcy Court relied on Sugar's testimony even though he was found not credible with regard to other transfers.[3] (Doc.#30, p. 26.)

---

[3] In the Consolidated Findings of Fact and Conclusions of Law, the Bankruptcy Court found: "Under these circumstances, the Court gives little weight to Sugar's testimony that it was only coincidence that Mrs. McCuan's name was added to the Brown Accounts and the BB&T Account shortly before Debtor defaulted on the Regions debt." (Doc. #6-3, p. 23.)

The relevant testimony by Sugar was in response to "inquiring as to the actual date, because the actual date is what's relevant here for this litigation.  And I'm asking you what documents exist that would show the actual date that this occurred."

> Well, I was physically not involved in signing this document.  I do know that I did receive copies of these documents in 2007.  So I imagine they were signed in 2007.  That is my assumption, based on what I had seen.  But if you were to say to me, was it signed on November 3rd? Was it signed on November 2nd? I don't know.

(Doc. #6-28, Exh. C, p. 58.)

Defendants argue that Regions failed to offer any evidence in opposition to summary judgment that would implicate Sugar's credibility, and Regions simply argued on rehearing that Sugar's credibility had not been demonstrated.   (Doc. #35, pp. 23-24.) "Here, no credibility determination was made, nor should one have been made because there was no basis to question either Mr. McCuan's or Sugar's testimony, as they did not conflict with each other, and Regions did not present any evidence to call their testimony into question."   (Id., pp. 24; see also pp. 41-42.) Defendants also note that Regions is precluded from raising the issue for the first time on appeal.  (Id., pp. 25, 45-46.)

Defendants produced 2008 K-1s and financial statements reflecting a 2007 transfer date, doc. #6-32, p. 3, however no evidence was produced as to when the documents were prepared, doc.

- 24 -

#6-36, p. 10.  Plaintiffs produced evidence suggesting they were not prepared until October 2008.  (Doc. #30, p. 24.)

The Bankruptcy Court concluded:

> The K-1s and personal financial statements, whenever they were prepared, will be consistent with the transfers having taken place on November 1st, 2007, and the Debtor will testify that notwithstanding the transfer of his interest to McCuan Family, LLC, he was still authorized to execute documents on Little Harper's and Lakefront's behalf.

(Doc. #6-36, p. 13.)  Plaintiffs argue: "Given that October 2008 was just after the Regions defaults, and during the same timeframe in which the bankruptcy court found that Sugar and Debtor were orchestrating fraudulent transfers to protect Debtor's assets from Regions [] the credibility of such documents to establish the date of execution of the Assignments is virtually nonexistent."  (Doc. #30, p. 60) (citation omitted).

Plaintiffs pointed out that debtor continued to sign documents on behalf of Little Harpers and Lakefront in 2008 and beyond, "and even represented himself to be the 'General Partner of Lakefront' and the 'managing member' of Little Harpers in such documents.  (Doc. #30, p. 24.)  Plaintiffs presented evidence that debtor certified on November 20, 2007 that his financial information reflecting his ownership in Little Harpers and Lakefront was true and correct.  (Id., p. 60.)  Plaintiffs also

presented evidence that debtor signed Resolutions on behalf of Little Harpers and Lakefront in October 2008.  (Id., pp. 60-61.)

Plaintiffs argue that there was nothing to indicate that debtor was signing on behalf of McCuan LLC as general manager. Rather, plaintiffs argue, debtor signed as "MGP" with various titles under his signature.  Plaintiffs take the position that the Bankruptcy Court improperly drew inferences in favor of defendants.  (Id., p. 61.)  Additional evidence presented was a Deed signed by debtor in 2010 as "General Partner" of Lakefront, and also another Deed on behalf of Little Harpers as a managing member.  (Id., p. 62.)

Plaintiffs argue that the Bankruptcy Court erroneously imposed a burden on them to prove that the statute of limitations defense did not exist.  Plaintiffs argue that nothing in Fla. Stat. § 56.29 imposes an express burden to prove that the transfer occurred within one-year prior to service of the original complaint, and that generally, a statute of limitations is an affirmative defense.  (Id., pp. 64, 66.)

On summary judgment, defendants took the position that the transfers of debtor's interests in Little Harper's and Lakefront took place in November 2007, outside the one-year look-back period, and plaintiffs took the position that the transfer took place within the one-year look-back period so after April 13, 2008. (Doc. #6-36, pp. 9-10.)

- 26 -

The Bankruptcy Court summarized the standard of review as follows:

> In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the plaintiff. The Eleventh Circuit has consistently held that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> The moving party may meet its burden of proof to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements on which the nonmoving party will bear the burden of proof at trial. That's Blow v. Virginia College, 2015 Westlaw 4503337, a decision dated July 24th, 2015; Moton v. Cowart, 631 F.3d 1337 at 1341, an Eleventh Circuit decision from 2011. And the Moton case of course, and all of these cases, citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 to 23, which is a 1986 Supreme Court case.

(Id., p. 11.)   The Bankruptcy Court found that plaintiffs presented no evidence that the transfers took place after April 13, 2008, "other than a few lines of deposition testimony, what they argue is the inconclusive dating of the assignments, and the fact that after the effective date of the assignments, the Debtor signed documents on behalf of Little Harper's and Lakefront." (Id., p. 12.)   The Bankruptcy Court found that Little Harper's assignment is clearly dated November 1, 2007, and the Lakefront assignment has a typewritten statement that is dated November 1, 2007, and therefore the dates are not ambiguous.  Both assignments

were witnessed by the same person, but plaintiffs did not offer the person's testimony on the issue of the date of execution. (Id.)

> While it is admittedly convenient for Debtor and Defendants to maintain that the date of execution of the assignments was November 1st, 2007, they have demonstrated that there is a lack of evidence to support the essential element that Plaintiffs must prove at trial.

(Id., p. 13.)   The Bankruptcy Court found that the transfers were more than four years prior to the bankruptcy filing and therefore not subject to avoidance.   (Id.)   The Bankruptcy Court found that the statute of limitations set forth in the Uniform Fraudulent Transfer Act does not apply to proceedings supplementary and denied summary judgment.   (Id., p. 14.)

On reconsideration, the Bankruptcy Court noted that it relied upon the deposition testimony of Sugar, "who stated: I do know that I did receive copies of these documents [referring to the Debtor's assignments dated as of November 1, 2007] in 2007. So I imagine they were signed in 2007."   (Doc. #6-49, p. 8.)   The Bankruptcy Court concluded that the testimony established that the assignments were executed in 2007 and prior to April 13, 2008. (Id.)   The Bankruptcy Court further concluded that the deeds and tax exemption forms were irrelevant because by February 2009, Regions had notice of the assignments.   The Bankruptcy Court found that the documents relied upon by plaintiffs did not refute Sugar's

testimony, and therefore did not show the presence of a genuine issue of material fact.  The Bankruptcy Court also noted that plaintiffs took no steps to depose the third-party witness to the assignments.  (Id., p. 9.)  The Bankruptcy Court concluded that the "mere scintilla of evidence" submitted in support of plaintiffs' position was insufficient.  (Id., p 13.) Reconsideration was denied.

"Our law is also clear that an appellate court reviews a bankruptcy court's grant of summary judgment *de novo*."  In re Optical Techs., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001) (collecting cases).  Just like the district court, a bankruptcy court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 applies in adversary proceedings.  Fed. R. Bankr. P. 7056. "[S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In re Optical Techs., Inc., at 1332 (citations omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The Bankruptcy Court determined that plaintiffs could not establish the essential element of their claim that the transfers occurred after April 13, 2008[4], and granted summary judgment in favor of defendants as to the Little Harper and Lakefront transfers. The Bankruptcy Court applied the correct standard of review as noted above, and clearly considered the K-1s, financial statements, and other evidence presented by plaintiffs. Nonetheless, the Bankruptcy Court found that the evidence simply did not create a genuine issue of fact surrounding the November 2007 date of the assignments.

It was not error "to charge **Plaintiffs** with producing evidence", doc. #30, p. 65 (emphasis in original), as the burden falls upon plaintiffs as the non-movants to respond with evidence

---

[4] This date is one year prior to the service of the summons and complaint in the Lake Trafford action filed originally in state court. (Doc. #6-3, p. 12.)

to show that there exists a genuine issue of material fact, Fed. R. Civ. 56(c).  The Court finds that the correct standard of review for a summary judgment was applied.

Plaintiffs argue that the plain language of Fla. Stat. § 56.29 provides that when a transfer is more than one year before service, it is the creditor's burden of proof to establish that a transfer was made to delay, hinder, or defraud creditors, not that the transfer is time-barred.

> When, within 1 year before the service of process on the judgment debtor in the original proceeding or action, the judgment debtor has had title to, or paid the purchase price of, any personal property to which the judgment debtor's spouse, any relative, or any person on confidential terms with the judgment debtor claims title and right of possession, the judgment debtor has the burden of proof to establish that such transfer or gift was not made to delay, hinder, or defraud creditors.

Fla. Stat. § 56.29(3)(a).  It is the burden of the debtor to prove that the transfer or gift was *not* made to delay, hinder, or defraud creditors, id., and the Bankruptcy Court stated that "Defendants must prove that the transfers were not made to hinder, delay, or defraud creditors in the 56.29 Proceeding."  (Doc. #6-3, p. 21.)

"As amended in 2014 and 2016, [56.29] now specifically permits claims under chapter 726 in a proceeding supplementary. But those claims are subject to chapter 726 and the rules of civil procedure."  Uoweit, LLC v. Fleming, 300 So. 3d 1201, 1205 (Fla.

4th DCA 2020), <u>review denied</u>, No. SC20-1513, 2020 WL 7334275 (Fla. Dec. 14, 2020).

> The court may entertain claims concerning the judgment debtor's assets brought under chapter 726 and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property. Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure.

Fla. Stat. § 56.29(9). A cause of action regarding a fraudulent transfer is extinguished unless:

> (1) Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> . . . .

Fla. Stat. § 726.110. "This statute extinguishes claims under the UFTA long before a claim in a proceeding supplementary is extinguished." <u>Uoweit</u>, 300 So. 3d at 1203.

The Bankruptcy Court noted: "In any event, even if a claim were made under Chapter 726, the transfers at issue were more than four years prior to the bankruptcy filing and are not subject to avoidance." (Doc. #6-36, p. 13.) On the other hand, the Bankruptcy Court stated: "Just to put that issue to rest, the statute of limitations set forth in the Uniform Fraudulent Transfer

Act does not apply to proceedings supplementary under Section 56.29(6)." (Id., p. 14.)  The Bankruptcy Court relied on Biel Reo, LLC v. Barefoot Cottages Dev. Co., LLC, 156 So. 3d 506, 510 (Fla. 1st DCA 2014) and Zureikat v. Shaibani, 944 So. 2d 1019, 1023 (Fla. 5th DCA 2006).  Biel interpreted the 2012 version of 56.29, and it has since been amended to incorporate the provisions of chapter 726.  Therefore, the Bankruptcy Court, at least in part, relied on a case that pre-dates the incorporation of the UFTA.  The reliance was harmless however, since the transfers were found to not be subject to avoidance even if examined under chapter 726.

### B. Mrs. McCuan

Plaintiffs argue that the Bankruptcy Court erred by not avoiding the Brown Account transfers and BB&T account transfers. Plaintiffs argue that the ruling is inconsistent with Fla. Stat. § 56.29, and that a money judgment should have been entered against Mrs. McCuan to carry out the purpose of the statute.  (Doc. #30, pp. 67-68.)

The Bankruptcy Court found that the evidence did not show that the Brown Accounts possessed the unities required to establish tenants by the entireties property.  The Brown Accounts were opened in debtor's name, and Mrs. McCuan was added in 2008 during the look-back period of Fla. Stat. § 56.29.  (Doc. #6-3, p. 17.) The evidence also did not show that the funds in the Brown Accounts

were traceable to tenants by the entireties property because the deposits made to the accounts could have been withdrawn, replaced, or mingled with other non-tenants by the entireties funds. (Id., p. 18.)   The Bankruptcy Court concluded, because the Brown Accounts were not funded with TBE property or traceable to TBE assets, that the subsequent transfers from the Brown Accounts did not constitute transfers of TBE assets that would not be avoidable. (Id., p. 19.)

The Bankruptcy Court found a number of factors present indicating actual and constructive fraud, and as relevant here,

> Debtor maintained control of the assets after the transfers. The transfers began in September 2008, with the addition of Mrs. McCuan to Debtor's Brown Accounts and the BB&T Account. Mrs. McCuan testified in a deposition that she was not involved in managing the Brown Accounts, that she did not direct any disbursements from the accounts, that she did not recall why any of the transactions had been made, and that she had never seen any statements from the accounts. Although Mrs. McCuan later testified at trial that she understood the Brown Accounts to hold retirement funds and that she had made decisions with respect to the investments, the Court gives this testimony little weight in view of its conflict with her earlier testimony.
>
> . . . .
>
> Debtor added Mrs. McCuan to the Brown Accounts and the BB&T Account in September 2008, when the default on the Regions debt was imminent. Specifically, Debtor and Sugar met with Regions that same month to discuss restructuring the Regions debt, and

> unsuccessfully proposed a restructuring plan
> for the loans.
>
> . . . .
>
> [T]he totality of the circumstances show that
> Mrs. McCuan's name was added to the Brown
> Accounts and the BB&T Account to hinder,
> delay, or defraud Regions.

(Id., pp. 22-23.) (footnotes omitted).  The Bankruptcy Court found

that debtor did not receive "reasonably equivalent value in

exchange for the transfers.  Debtor testified that Mrs. McCuan

gave no consideration in exchange for having her name added to the

Brown Accounts."  (Id., p. 24.)

Despite finding that debtor added Mrs. McCuan to the Brown

Accounts and the BB&T account with intent to hinder, delay, or

defraud Regions, the Bankruptcy Court found no evidence of

fraudulent intent by Mrs. McCuan or that she ever exercised any

control over the assets in the accounts, whether while at Brown

Company or BB&T or when the funds were transferred to other joint

accounts.  (Id., p. 25.)

> [I]f, as here, the property transferred is an
> intangible asset (such as a bank account or an
> investment account) and the non-debtor spouse
> did not take any control of the asset, even
> for "necessities," it is difficult for the
> Court to envision entering a judgment against
> the non-debtor spouse, no matter how ill-
> intentioned the debtor was, for the value of
> accounts transferred.

(Id., p. 26.)  It was noted that "Plaintiffs' assertions reflect" an acknowledgement of little or no control over the accounts by Mrs. McCuan.  (Id., p. 27.)

The Bankruptcy Court concluded:

> Here, applying a "spirit of fairness, justness, and right dealing," and taking a "flexible, pragmatic, equitable approach," the Court finds, on the specific facts presented, and considering the transactions between Debtor and Mrs. McCuan in their entirety, that it would be inequitable to enter judgment against Mrs. McCuan for the value of the assets in the Brown Accounts as of September 2008, which was calculated as $2,759,050.00, or the value of the BB&T Account as of September 2008, which was calculated as $387,000.00.
>
> Consequently, with respect to Plaintiffs' claims against Mrs. McCuan, judgment should be entered in favor of Defendant, Jill McCuan, and against Plaintiffs.

(Id., p. 28.)

Plaintiffs argue that Mrs. McCuan was added as a tenant-by-entirety, which can afford a spouse the legal right to equally control property.  (Id., p. 72.)  Plaintiffs argue that Mrs. McCuan had the legal right to exercise control over the accounts even if she did not do so.  "It also merits mention that most of the Brown Accounts assets were transferred to a SunTrust Account held jointly by Debtor and Mrs. McCuan, or to the McCuan Trust for which Mrs. McCuan was a beneficiary."  (Id., p. 73.)

Defendants argue in response:

> Here, Regions meticulously and thoroughly argued
> that at no time were the Brown Accounts or their
> contents **ever** tenancy by the entireties
> property. Based upon that argument, with which
> the Bankruptcy Court agreed, there is no legal
> basis to enter judgment against Mrs. McCuan for
> the funds and assets within the accounts, **as by
> Regions' own argument, she never took a tenancy
> by the entireties interest in them.**

(Doc. #35, pp. 30-31) (emphasis in original).

Plaintiffs argue that Mrs. McCuan was not a "mere conduit." (<u>Id.</u>, p. 71.)   Defendants respond that the arguments are irrelevant because the Bankruptcy Court did not characterize Mrs. McCuan as a 'mere conduit'.   (Doc. #35, p. 36 n.6.)   Even if the mere conduit affirmative defense was applicable, plaintiffs argue that defendants never raised or proved this defense or its applicability.   (<u>Id.</u>, pp. 73-74.)   Therefore, it is argued that the Bankruptcy Court's *sua sponte* application of the defense is an independent basis for reversal.   (<u>Id.</u>, p. 75.)   Defendants argue, "even in the face of actual fraud," it was not reversible error to limit recovery upon consideration of the equities.   (<u>Id.</u>, p. 33.)

Although a TBE could give Mrs. McCuan certain rights as the spouse, this is only so if the TBE is valid.   "When property is held jointly by a husband and wife, it is presumed to be held as a tenancy by the entirety unless specifically delineated otherwise, "as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship."   <u>In re McCuan</u>, 569 B.R.

511, 518 (M.D. Fla. 2017) (citing Beal Bank, SSB v. Almand & Assocs., 780 So. 2d 45, 58 (Fla. 2001).   In this case, the Bankruptcy Court did not find that the unities were present and therefore the TBE was not formed.  As a result, plaintiffs cannot successfully argue that Mrs. McCuan was granted equal control over the property because the transfers were essentially nullified.

Plaintiffs argue that Mrs. McCuan was treated as a mere conduit, and the exception was applied even though the defense was not raised.  Defendants respond that the arguments are irrelevant because the Bankruptcy Court did not characterize Mrs. McCuan as a 'mere conduit'.  (Doc. #35, p. 36 n.6.)

The Bankruptcy Court stated:  "In the context of evaluating a fraudulent transfer recipient's assertion of the mere conduit defense under § 548 of the Bankruptcy Code, two courts have stated that the defense is "'based on, and defined by, equity,' requir[ing] the Court to take 'a flexible, pragmatic, equitable approach,' considering a transaction in its entirety, rather than focusing in on the particular transfer in question."  (Doc. #6-3, p. 28.)

"The mere conduit or control test is a judicial creation that is not based in statutory language, but is an exception based on the bankruptcy courts' equitable powers."  In re Harwell, 628 F.3d 1312, 1322 (11th Cir. 2010).  "The control test, then, as adopted by this circuit, simply requires courts to step back and evaluate

a transaction in its entirety to make sure that their conclusions are logical and equitable. This approach is consistent with the equitable concepts underlying bankruptcy law." In re Chase & Sanborn Corp., 848 F.2d 1196, 1199 (11th Cir. 1988). "As we read it, the conduit rule presumes that the facilitator of funds acts without bad faith, and is simply an innocent participant to the underlying fraud." In re Int'l Admin. Servs., Inc., 408 F.3d 689, 705 (11th Cir. 2005).

Although the Court could not dismiss a complaint on its face based on an affirmative defense, the Bankruptcy Court could consider the issue on summary judgment, or in this case after trial. Perlman v. Bank of Am., N.A., 561 F. App'x 810, 814 (11th Cir. 2014). In this case, the Bankruptcy Court concluded based on the transactions taken in their entirety, that it would be inequitable to enter judgment against Mrs. McCuan for the value of the assets. (Doc. #6-3, p. 28.) This conclusion was reached after hearing all the evidence, and under the purview of the Bankruptcy Court's equitable powers to apply the exception. Although debtor's actions were not innocent, there was no evidence presented of bad faith on behalf of Mrs. McCuan such that judgment would be appropriate against her.

Accordingly, it is hereby

**ORDERED:**

1. The Bankruptcy Court's Consolidated Findings of Fact and Conclusions of Law are **affirmed** as to the three issues raised by Appellants-Defendants.

2. The Bankruptcy Court's Consolidated Findings of Fact and Conclusions of Law, Order on Implead Third Party Defendants' Motion for Summary Judgment, and Final Judgment are **affirmed** as to the three cross-issues raised by Appellees-Plaintiffs.

3. The Clerk shall transmit a copy of this Opinion and Order to the Clerk of the Bankruptcy Court and close the appellate file.

**DONE and ORDERED** at Fort Myers, Florida, this ___15th___ day of June 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Clerk, Bankr. Ct.
Counsel of Record
Hon. Caryl E. Delano